UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

EDWARD O. ALLEN,

                      Appellant,

v.

                      Case No. 14-CV-1599-JPS

CHRISTOPHER C. FREUND,

                      Appellee.                    ORDER

       In this bankruptcy appeal, the appellant, Edward Allen ("Allen"), challenges the bankruptcy court's dismissal of his adversary complaint against Christopher Freund ("Freund").

       Allen owned commercial property located at 4117 North Green Bay Ave., in Milwaukee, Wisconsin.[1] (Docket #1, Ex. 1 ¶ 6).[2] In 2010, that property secured several debts: (1) a primary mortgage held by M&I Bank of approximately $105,000.00; (2) a secondary mortgage held by Chase Bank of approximately $102,568.00; and (3) back taxes of approximately $39,780.00. (Docket #1, Ex. 1 ¶ 7). Allen, however, "was either close to or in default on the loans starting in May 2010." (Docket #1, Ex. 1 ¶ 8). He was living in

---

[1]The bankruptcy court dismissed the adversary complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In reviewing that order, the Court must accept as true all of Allen's well-pleaded factual allegations. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and Northwest Indiana*, --- F.3d ----, 2015 WL 2151851, at *12 (7th Cir. May 8, 2015) (citing *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014)).

[2]The entire record on appeal from the bankruptcy court is attached as a single exhibit to the first docket entry in this case. That single exhibit, in turn, holds multiple documents. The Court will cite to those separate documents as "Ex. [###]" for the duration of this order.

California at the time and was interested in selling the property. (Docket #1, Ex. 1 ¶ 9).

Fortuitously (or at least it must have seemed so at the time), Freund wrote a letter to Allen expressing interest in purchasing the property. (Docket #1, Ex. 1 ¶ 9). Allen explained that he would be interested in selling the property only if Freund would purchase the property for the amounts owed on the two mortgage notes and back taxes. (Docket #1, Ex. 1 ¶ 10). Allen "generally agreed" to this arrangement, so Allen traveled to Milwaukee from California to give Freund a tour of the property. (Docket #1, Ex. 1 ¶ 11).

During this time, Freund expressed some interest in the property and asked Allen to provide contact information for the mortgage-holders' asset managers; Freund explained that he hoped to work with the asset managers to arrange a "short sale." (Docket #1, Ex. 1 ¶ 12). In other words, Freund represented that he would call asset managers for M&I and Chase to "try to convince [them]…to take something less than the full amount of the loan due and owing to them." (Docket #1, Ex. 1 ¶ 12). Presumably, this represented a good deal for Allen: he would be able to rid himself of the property without any remaining liabilities, as Freund would negotiate to reduce the remaining mortgage balances—although, it also does not appear that this proposed deal would have provided Allen with any money to walk away with. (Docket #1, Ex. 1 ¶ 13). With this understanding, Allen provided the contact information to Freund. (Docket #1, Ex. 1 ¶ 13).

Rather than use the contact information to facilitate a short sale, Freund contacted M&I Bank and arranged to purchase the primary mortgage note on the property. (Docket #1, Ex. 1 ¶ 14). This enabled Freund to foreclose against Allen, receive a judgment of foreclosure, and force a

sheriff's sale of the property. (Docket #1, Ex. 1 ¶¶ 15–17). At that sheriff's sale, in 2011, Freund purchased the property "either individually or through his company, J Crawford Investments." (Docket #1, Ex. 1 ¶ 17). Thus, after the sale, Freund owned the property, not subject to any debt. (Docket #1, Ex. 1 ¶ 17). On the other hand, Allen lost the property and was left with the second mortgage, owned by Chase, which was no longer secured by the property, making Allen the sole guarantor of the loan. (Docket #1, Ex. 1 ¶ 17).

Allen sued Freund in state court, "seeking recovery of damages for allegedly fraudulent actions carried out by" Freund. (Docket #1, Ex. 1 ¶ 4). That state court suit was stayed when Freund filed a Chapter 13 petition for bankruptcy in 2013. (Docket #1, Ex. 1 ¶¶ 3, 4).

Thus, Allen filed this adversary proceeding, asserting intentional misrepresentation and unjust enrichment claims against Freund, and requesting that the bankruptcy court find that Freund owes a debt to Allen that is not dischargeable under 11 U.S.C. §§ 523(a)(2), 523(a)(4), 523(a)(6), and 523(c). (Docket #1, Ex. 1 ¶¶ 18–38).

Freund moved to dismiss the adversary complaint. (Docket #1, Exs. 4, 5). At the bankruptcy court's request, the parties briefed that motion. (Docket #1, Exs. 8, 16, 17).

Then, on September 3, 2014, the bankruptcy court held a hearing on the motion, at which it granted the motion. (Docket #1, Ex. 20). For the most part, the bankruptcy court dismissed Allen's claims with prejudice, finding that Allen could not possibly state a claim under 11 U.S.C. § 523(a)(2)(B), 523(a)(4), 523(a)(6), or 523(c). (Docket #5, Ex. 1, Document 34 ("Tr.") at 37–39). However, the bankruptcy court's dismissal was without prejudice to Allen's ability to file an amended complaint re-asserting his "remaining claims," including his "intentional misrepresentation claim, his related Section

523(a)(2)(A) claim and his unjust enrichment claim." (Tr. 39). Specifically, the bankruptcy court offered Allen until October 3, 2014, to file and serve an amended complaint; if Allen did not file an amended complaint, then the bankruptcy court would enter its "whole judgment…in [Freund's] favor." (Tr. 39). The bankruptcy court formalized this requirement in an order, stating "that if Mr. Allen does not file an amended complaint by October 3, 2014, final judgment will be entered in the defendant's favor dismissing all claims." (Docket #1, Ex. 22).

Allen did not timely file an amended complaint, so the bankruptcy court dismissed his adversary proceeding on November 7, 2014. (Docket #1, Ex. 24). In doing so, the bankruptcy court stated, "IT IS ORDERED that the plaintiff, Edward O. Allen, recover nothing, and the action is dismissed on the merits." (Docket #1, Ex. 24 at 2). Judgment was thereafter entered, incorporating the terms of the dismissal order. (Docket #1, Ex. 25).

Allen appealed, arguing that the bankruptcy court should not have dismissed the adversary proceeding. (Docket #1). Allen filed a brief in support of his position on appeal, and Freund responded. (Docket #5, #6). Allen did not file a reply brief, but the time for him to do so has long since passed, so the Court considers this matter fully briefed.

The Court has jurisdiction to decide it. The Court may hear appeals "from final judgments, orders, and decrees" of the bankruptcy courts. 28 U.S.C. § 158(a)(1). Thus, here, because the bankruptcy court dismissed the adversary complaint "on its merits," after Allen let his opportunity to amend expire, the bankruptcy court's order is final and the Court has jurisdiction to consider it on appeal. *See, e.g.*, *Stanek v. St. Charles Comm. Unit Sch. Dis. No. 303*, 783 F.3d 634, 639–40 (7th Cir. 2015) (in non-bankruptcy case, where plaintiff had let expire an opportunity to amend following dismissal without

prejudice, the Seventh Circuit held that "he was entitled to accept the dismissal as one with prejudice and take an appeal in which he could test the legal sufficiency of his complaint") (citing *Anderson v. Catholic Bishop of Chicago*, 759 F.3d 645, 649 (7th Cir. 2014); *Furnace v. Bd. of Trs. of S. Ill. Univ.*, 218 F.3d 666, 669–70 (7th Cir. 2000)).

The Court reviews the bankruptcy court's factual findings for clear error and its legal conclusions de novo. *In re Marcus-Rehtmeyer*, No. 14-1891, --- F.3d ----, slip op. (7th Cir. Apr. 28, 2015) (citing *In re Mississippi Valley Livestock, Inc.*, 745 F.3d 299, 302 (7th Cir. 2014)).

The issue presented on appeal is very narrow: whether the bankruptcy court erred in dismissing Allen's 11 U.S.C. § 523(a)(2)(A) claim. Allen has made clear that he is no longer pursuing his 11 U.S.C. § 523(a)(4) claim. (Docket #5 at 14 n.2). Meanwhile, he does not make any mention or argument regarding the other three claims that the bankruptcy court dismissed with prejudice: 11 U.S.C. §§ 523(a)(2)(B), (a)(4), and (c). He also does not mention his underlying unjust enrichment claim, instead focusing purely on fraud/intentional misrepresentation. As such, the Court understands Allen to be foregoing those arguments on appeal; and, even if he did not intend to forego them, he has waived them by failing to adequately raise them. *Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) (appellate court not required to "scour a record to locate evidence supporting a party's legal argument"; "[p]erfunctory or undeveloped arguments are waived"). Thus, the Court will focus on whether the bankruptcy court erred in dismissing Allen's 11 U.S.C. § 523(a)(2)(A) claim.

Under 11 U.S.C. § 523(a)(2)(A), a debt is nondischargeable to the extent it was obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial

condition." To prove this, a plaintiff must show: "(1) that [the Debtor] made a false representation or omission, which he either knew was false or made with reckless disregard for the truth; (2) that [the Debtor] possessed an intent to deceive or defraud; and (3) that [the Plaintiff] justifiably relied on the false representation."[3] *In re Davis*, 638 F.3d 549, 553 (7th Cir. 2011).

For the bankruptcy court to have dismissed this claim on the merits, it must have found that Allen's adversary complaint did not set forth facts to adequately demonstrate those elements. As already noted, the bankruptcy court gave Allen an opportunity to amend his complaint. He chose not to do so. Therefore, Allen cannot proceed by arguing that he might have been able to plead additional facts; he accepted the dismissal of his adversary complaint on its merits preserving only an argument that his adversary complaint, itself, was legally sufficient. *See Stanek*, 783 F.3d at 639–40 (citing *Anderson*, 759 F.3d at 649; *Furnace*, 218 F.3d at 669). He seems to acknowledge this point, stating that his "primary argument on appeal is that the facts alleged showing reliance are, in effect, the only facts available to show reliance." (Docket #5 at 6).

Allen's complaint made the following allegations relating to his fraud claim:

> 19.     On or about September 25th, 2010, Defendant Freund represented to Mr. Allen that he was interested in purchasing the Property from Mr. Allen and requested that Mr. Allen visit Milwaukee to show Mr. Freund the Property. Plaintiff flew to Milwaukee to show the property with the purpose to facilitate the sale transaction.

---

[3]These elements are practically identical to the underlying intentional misrepresentation claim, *see Mackenzie v. Miller Brewing Co.*, 2001 WI 23, ¶ 6, 241 Wis. 2d 700, 623 N.W.2d 739, so the Court will discuss the elements together.

20.     During phone discussion and subsequent in person conversation in Milwaukee, Mr. Allen explained and made it known and clear to Debtor that he was not interested in making a profit from the Sale of the Property but would sell at a discount as long as the purchase price would cover and satisfy the three liens attached to the Property.

21.     Mr. Freund represented that he was agreeable to these terms.

22.     Mr. Freund, the Debtor, then requested from Mr. Allen the identity of the bank officer or employee at M&I Bank responsible for the M&I Loan secured by the Property and represented that the purpose for wanting that information was to allow Debtor to contact that bank official to negotiate a lower payoff for the outstanding loans due to the Bank by Mr. Allen as part of a potential sale between Mr. Allen and Mr. Freund.

23.     Mr. Allen relied on these representations by Mr. Freund and Mr. Freund's promise to act in accordance with his statements and in particular to act not to the detriment of Mr. Allen when speaking with the Bank and otherwise.

24.     Defendant stated his interest and purpose was to purchase the property not the Note. Debtor Defendant verbally agreed with Plaintiffs only sale requirement, which was that the purchase price cover the amount owed on the purchase money mortgage, the promissory note, and back taxes.

25.     As a result of his representations, Mr. Freund owed a duty to Mr. Allen to act in accordance with his representations that he was intending to purchase the property from Mr. Allen and not the Note from one of the Banks.

26.     The representations made by Mr. Freund were false and intentionally false and misleading. The true facts were that Defendant intended to take advantage of Mr. Allen and attempt to obtain an assignment of the first mortgage directly from the mortgage note holder, M&I Bank, and then foreclose on the property in order to obtain and maximize the equity in the Property.

27. Mr. Freund knew that doing so would extinguish the 2nd promissory note owed to Chase and result in him owning the Property free and clear and potentially with substantial equity.

28. When Mr. Freund made these representations and promises, he knew them to be false, and had no intention of carrying out his promises and made these representations and promises with the intent to induce Mr. Allen to provide him the contact information for the bank officer and to lull Mr. Allen into a false sense of comfort that Mr. Freund would not take steps to hurt Mr. Allen's position.

29. At the time of these representations and promises, and at the time Debtor took the actions alleged herein, Mr. Allen was unaware of the falsity of Defendant's representations and believed them to be true. Mr. Allen was unaware and did not believe that Defendant's secret intention was to take advantage of Mr. Allen, and in the exercise of reasonable diligence could not have discovered Defendant's secret intention.

30. Had Mr. Allen known the actual facts and Mr. Freund's actual intent, Mr. Allen would not have revealed the identity of the bank officer or flew to Milwaukee in the first instance to meet Mr. Freund.

31. As a result of Mr. Freund's fraudulent representations, promises and actions, Plaintiff, Mr. Allen, remains obligated for back taxes and a loan amount owed to Chase Bank in an amount to be proven at trial.

(Docket #1, Ex. 1 ¶¶ 19–31).

Those allegations clearly satisfy even the heightened pleading standards of Federal Rule of Civil Procedure 9(b), which requires allegations of fraud to be pled with particularity. *See Davis*, 638 F.3d at 555 (in reviewing 11 U.S.C. § 523(a)(2) fraud claims, noting that complaint did not "satisfy Rule 8(a), let alone the more stringent Rule 9(b) standard that applies here.") Allen identifies all of the particulars of the fraud: *who* (Freund); *what* (false statements regarding his intention to arrange a short sale); *when* (in Fall of

2010); *where* (in Milwaukee, after Freund traveled here); *and how* (by requesting the contact information for the asset managers and then using that information to purchase Allen's mortgage).

Allen also clearly pled that Freund had an intent to deceive or defraud: "When Mr. Freund made these representations and promises, he knew them to be false, and had no intention of carrying out his promises and made these representations and promises with the intent to induce Mr. Allen to provide him the contact information for the bank officer…" (Docket #1, Ex. 1 ¶ 28).

As to justifiable reliance, Allen clearly alleged that he relied on Freund's representations and provided the contact information for the creditors. (Docket #1, Ex. 1 ¶¶ 13, 22–24). The fact that he turned over the information, alone (Docket #1, Ex. 1 ¶ 13), is enough to show reliance when taken in conjunction with Allen's statements regarding his understanding of Freund's representations (Docket #1, Ex. 1 ¶¶ 22–24). It is unclear what else Allen would have to have pled to establish reliance. This is not a "naked assertion[] devoid of further factual enhancement," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); it is an allegation of fact supported by Allen's understanding. There was also ample factual matter to plausibly show that Allen's reliance was justifiable. This is a doubly low standard, here. To begin, justifiability is a low standard, itself, even lower than reasonableness; it is not satisfied when an individual "blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Field v. Mans*, 516 U.S. 59, 70–71 (1995). Next, the Court must take the low justifiability standard in combination with the low requirement that a pleading need only state a claim that is plausible on its face. *E.g.*, *Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007). Allen's adversary complaint satisfied that standard: he pled that Freund "verbally agreed with [Allen's] only sale requirement, which was that the purchase price cover the amount owed on the purchase money mortgage, the promissory note, and back taxes." (Docket #1, Ex. 1 ¶ 24). If Allen eventually establishes the existence of a verbal agreement, he could plausibly show that he justifiably relied upon Freund's representations. That is all that is necessary at this early stage.

The bankruptcy court also found that Allen had not adequately pled damages on his claim, and thus should not be allowed to proceed on it; the Court disagrees. Allen alleged that "[d]uring 2010, the property had sufficient equity to cover the outstanding liability for all three liens." (Docket #1, Ex. 1 ¶ 8). If so, then Allen was damaged when Freund obtained the property by buying the note, foreclosing on it, and purchasing the property at an auction; presumably, without Freund taking that action, Allen could have sold the property to Freund or a third party and recouped some cost. The bankruptcy court disagreed, noting that Allen's general amenability to a short sale is inconsistent with a belief that there was equity in the property. (Docket #2 at 29:15–30:6). Those two concepts are, indeed, inconsistent with one another; but, just because Allen *believed* at the time that a short sale was a good idea, does not mean that, *in fact*, he had no equity in the property. His belief at the time could have been mistaken. And, while Allen's allegation that he had equity is bare-bones, it is sufficient to escape dismissal at this early stage. The bankruptcy court also pointed out that Allen may be foreclosed from arguing that he had equity in the building, because the sheriff's sale price represents the fair value of the property under Wisconsin law. (Docket #2 at 28:17–29:7), but at this juncture, it is not clear how much

it was sold for at auction.[4] Of course, if there is evidence that Allen, in fact, did not have any equity in the property, then Freund can immediately produce that evidence and move for summary judgment. For the present, however, the Court is obliged to determine that Allen adequately pled damages.

For these reasons, the Court finds that Allen adequately pled his 11 U.S.C. § 523(a)(2)(A) claim.

Finally, the Court must address Freund's single argument in opposition to Allen's position appeal.[5] Freund argues that there could be no violation of 11 U.S.C. ¶ 523(a)(2)(A), because there was no transaction between the parties. He did not provide any legal authority to support his position, so the Court views the argument as having been waived. *Estate of Moreland*, 395 F.3d at 759. Furthermore, even if not waived, the bankruptcy court thoroughly analyzed the issue in its hearing, and the Court agrees with the bankruptcy court's reasoning. (*See* Docket #2 at 23:9–25:11). The Court, therefore, rejects Freund's argument.

The Court is obliged to vacate the bankruptcy court's order dismissing Allen's adversary complaint and remand this case for further proceedings consistent with this order.

Accordingly,

---

[4]In a brief before the bankruptcy court, Freund argued that the most recent property assessment of the property lists its value at $57,600.00. (Docket #1, Ex. 17 at 2). But he did not produce evidence of that fact (he would need to do so and to move for summary judgment if he wanted the bankruptcy court to consider that) and the most recent assessed value may not be evidence of its value in 2010.

[5]Freund did not address any of the issues raised by Allen.

IT IS ORDERED that the order of the bankruptcy court under review be and the same is hereby VACATED and REMANDED for further proceedings consistent with this order; and

IT IS FURTHER ORDERED that this case be and the same is hereby DISMISSED.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 4th day of June, 2015.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge